**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| REGINA SADYKOVA,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH SHORE CHEMIST LLC d/b/a NORTHSHORE CHEMIST PHARMACY, and KATHERINE "KATHY" ELASHVILI, individually,<br><br>Defendants. | Case No.: 2:26-cv-6858<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL** |

Plaintiff Regina Sadykova ("Plaintiff"), by her attorneys Sage Legal LLC, brings this action individually, on behalf of similarly situated employees under 29 U.S.C. § 216(b), and on behalf of the New York classes defined below under Rule 23 of the Federal Rules of Civil Procedure, against Defendants North Shore Chemist LLC d/b/a Northshore Chemist Pharmacy (the "Corporate Defendant" or the "Pharmacy") and Katherine "Kathy" Elashvili ("Elashvili", and together with the Corporate Defendant, "Defendants"). Based on personal knowledge as to her own acts and experiences and on information and belief as to all other matters, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. This is a collective and class action to recover minimum wages, straight-time wages, overtime compensation, earned commissions, unlawfully deducted wages, statutory damages, retaliation damages, liquidated damages, interest, attorneys' fees, and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.*; and New York common law.

2. From approximately February 11, 2025 through approximately July 25, 2025, Defendants employed Plaintiff as a non-exempt pharmacy technician at their Great Neck, New York pharmacy.

3. Defendants agreed to pay Plaintiff $19.00 per hour and later promised her a commission equal to fifty percent (50%) of the retail merchandise she sold.

4. Plaintiff regularly worked a six-day schedule that totaled approximately 48.5 scheduled hours.

5. Defendants failed to pay her for all straight-time hours, failed to pay the required overtime premium for hours over forty in a workweek, failed to pay earned commissions, and at times withheld all wages for four to five consecutive weeks.

6. Beginning within weeks of her hire, Plaintiff repeatedly complained directly to Elashvili about late and missing pay and, later, unpaid overtime.

7. Instead of correcting the violations, Defendants became hostile, threatened Plaintiff, and terminated her immediately after she again demanded the wages she had earned.

8. Defendants' conduct was knowing and willful.

9. Elashvili controlled Plaintiff's hire, schedule, compensation, payroll, supervision, and termination; received Plaintiff's repeated complaints; promised payment; and nevertheless permitted the violations to continue.

## JURISDICTION AND VENUE

10. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this case arises under the FLSA.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims, including the claims asserted on behalf of the Rule 23 classes, because

those claims arise from the same employment relationship, compensation practices, wage complaints, and termination as the FLSA claims.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred at Defendants' pharmacy in Great Neck, Nassau County, New York.

13. The Court may exercise personal jurisdiction over Defendants because they reside in, transact business in, and committed the acts alleged in New York.

**PARTIES**

14. Plaintiff is an adult resident of Queens County, New York.

15. During the relevant period she was an "employee" within the meaning of 29 U.S.C. § 203(e) and N.Y. Lab. Law § 190(2).

16. The Corporate Defendant is a New York limited liability company that operates a retail pharmacy at 800 Northern Boulevard, Unit 4, Great Neck, New York 11021, under the name Northshore Chemist Pharmacy.

17. At all relevant times, the Corporate Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law § 190(3).

18. Elashvili was the Pharmacy's supervising pharmacist and operating manager.

19. She hired Plaintiff, assigned and supervised Plaintiff's work, set Plaintiff's schedule and compensation, controlled whether and when Plaintiff was paid, responded to Plaintiff's wage complaints, and made the decision to terminate Plaintiff.

20. Through this direct operational control, Elashvili acted in the interest of the Corporate Defendant in relation to Plaintiff and was Plaintiff's employer under the FLSA and NYLL.

21. Defendants jointly employed Plaintiff and are jointly and severally liable for the wage-and-hour and retaliation violations alleged below.

## FLSA COVERAGE

22. At all relevant times, the Corporate Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s).

23. The Pharmacy sold prescription medications, over-the-counter medications, supplements, cosmetics, and other goods that had moved in interstate commerce and used interstate channels and instrumentalities to conduct its business.

24. Upon information and belief, the Corporate Defendant had an annual gross volume of sales made or business done of at least $500,000.00 during the relevant period.

25. The facts necessary to confirm Defendants' precise gross sales are uniquely within Defendants' possession.

26. In performing her pharmacy-technician and retail duties, Plaintiff handled and sold goods that had moved in interstate commerce and used Defendants' telephones, computers, payment systems, the goods sold, and other instrumentalities used in interstate commerce.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment, Duties, and Schedule

27. Defendants hired Plaintiff on or about February 11, 2025 as a pharmacy technician and paid her by company check.

28. Plaintiff's duties included assisting customers, answering telephone calls, helping pharmacists, processing retail sales, and performing other tasks necessary to operate the Pharmacy.

29. Plaintiff was paid on an hourly basis, was not paid a salary, did not exercise the discretion or independent judgment of an exempt employee, and was not exempt from federal or New York minimum-wage or overtime requirements.

30. Defendants agreed to pay Plaintiff a regular hourly rate of $19.00.

31. Plaintiff's regular schedule generally tracked the Pharmacy's operating hours: Monday through Thursday from approximately 9:30 a.m. to 6:30 p.m.; Friday from approximately 9:30 a.m. to 5:00 p.m.; and Saturday from approximately 10:00 a.m. to 3:00 p.m.

32. That schedule totaled approximately 48.5 hours.

33. In multiple workweeks, Plaintiff worked more than forty (40) compensable hours, and Defendants knew her schedule and the work she performed.

34. Defendants controlled the premises, schedule, staffing, payroll, and records necessary to determine Plaintiff's exact compensable hours and wages.

35. To the extent those records are incomplete or inaccurate, Plaintiff will rely on her recollection and a just and reasonable inference from the available evidence.

**Irregular and Unpaid Hourly Wages**

36. During approximately the first two to three (2-3) weeks of Plaintiff's employment, Defendants issued wage payments with relative regularity.

37. By late February or early March 2025, however, Defendants began paying Plaintiff late and inconsistently.

38. Plaintiff promptly complained directly to Elashvili that her wages were missing or late.

39. Elashvili did not dispute that pay was owed and instead responded with vague assurances such as, "I'll give it to you."

40. The assurances were not fulfilled.

41. From March 2025 through the end of Plaintiff's employment, payments became increasingly irregular, and Defendants at times failed to pay Plaintiff any wages for four to five (4-5) consecutive weeks.

42. In workweeks when Defendants paid Plaintiff approximately $921.50 for a 48.5-hour schedule, the payment reflected no separate overtime premium and did not compensate Plaintiff at one and one-half times her regular rate for compensable hours above forty (40).

43. In workweeks when Defendants paid no wages, Plaintiff received less than both the federal and New York minimum wage for every compensable hour she worked.

44. Defendants never provided a reliable pay schedule or a complete accounting of the hours and wages for which Plaintiff had and had not been paid.

45. Plaintiff repeatedly complained that she had not received all straight-time and overtime wages due.

46. Elashvili knew Plaintiff continued to work the schedule Elashvili assigned, but Defendants did not cure the underpayments.

47. By the end of Plaintiff's employment, Defendants had paid only a fraction of the hourly wages and overtime compensation Plaintiff earned.

48. The exact amount is ascertainable from Defendants' time, payroll, and bank records and will be determined through discovery.

49. Defendants also failed to pay all outstanding hourly wages and other earned compensation no later than the next regular payday after Plaintiff's termination.

**Unpaid Commissions and Wage Deductions**

50. During Plaintiff's employment, Elashvili promised Plaintiff a commission equal to fifty percent (50%) of the retail merchandise Plaintiff sold at the Pharmacy.

51. Relying on that promise, Plaintiff promoted and sold approximately $400.00 in retail merchandise on a typical workday, in addition to performing her regular pharmacy-technician duties.

52. Defendants accepted the benefit of those sales but did not pay Plaintiff the promised commissions.

53. Based on Plaintiff's sales estimates, Defendants withheld approximately $16,800.00 in commissions, subject to an accounting using Defendants' point-of-sale and payroll records.

54. The promised commissions were part of Plaintiff's agreed compensation and constituted wages under New York law.

55. They also increased Plaintiff's regular rate for purposes of calculating overtime.

56. At the outset of employment, Elashvili also promised Plaintiff a twenty-five percent (25%) employee discount on merchandise purchased from the Pharmacy and a ten percent (10%) discount on candies and related items.

57. Defendants later charged the full, undiscounted price of Plaintiff's purchases against wages otherwise due, while accusing Plaintiff of having applied a larger discount.

58. Defendants did not provide Plaintiff with a complete itemized accounting of those charges.

59. Plaintiff did not provide written, voluntary authorization for such wage deductions after receiving written notice of all terms, conditions, limits, and deduction procedures required by New York law.

60. Defendants' offsets and deductions reduced wages otherwise due to Plaintiff and compounded Defendants' failure to pay the promised employee discount and earned compensation.

**Inaccurate Wage Statements and Resulting Harm**

61. With at least some wage payments, Defendants furnished documents purporting to be wage statements.

62. Those statements were inaccurate or incomplete because, among other things, they did not accurately identify all regular hours, overtime hours, regular and overtime rates, earned commissions, gross wages, deductions, and net wages associated with the payment.

63. The inaccurate statements did more than create a technical violation.

64. They prevented Plaintiff from using the statements to determine which hours and commissions had been paid, to calculate the precise shortfall, and to identify and challenge unauthorized deductions.

65. Because the statements concealed the scope of the underpayment and did not permit a meaningful reconciliation, Plaintiff was unable to make a fully documented demand while still employed; the wage deprivation was prolonged; and Plaintiff incurred financial hardship while waiting for wages needed for ordinary living expenses.

66. Defendants had a duty to preserve accurate, contemporaneous records of Plaintiff's hours, rates, gross wages, deductions, commissions, and net wages, but failed to provide records that reconciled the compensation actually due and paid.

**Plaintiff's Wage Complaints and Retaliatory Termination**

67. Beginning in approximately the third week of her employment and continuing from March through July 2025, Plaintiff repeatedly complained directly to Elashvili about late and missing hourly wages.

68. As Plaintiff continued working workweeks over forty hours, she also complained that Defendants were not paying the legally required overtime premium.

69. Plaintiff's complaints were sufficiently clear to inform Elashvili that Plaintiff was asserting a right to be paid all wages and overtime legally due for the hours she worked.

70. Instead of correcting payroll, Elashvili's response progressed from dismissive assurances to aggression and verbal abuse.

71. In connection with Plaintiff's demands to be paid, Elashvili threatened Plaintiff by stating, in substance, "I'm going to kill you."

72. Plaintiff's coworkers observed Elashvili's reaction to the wage dispute and advised Plaintiff to stay quiet to avoid further conflict.

73. Plaintiff nevertheless continued to demand the hourly wages, overtime, and commissions she had earned because Defendants' nonpayment was causing her substantial financial difficulty.

74. In or about July 2025, Plaintiff experienced a flat tire and promptly informed Elashvili that it prevented her from getting to work.

75. Elashvili initially said she understood.

76. During the same exchange or immediately thereafter, Plaintiff again raised the wages Defendants still owed her.

77. Elashvili's demeanor changed abruptly, and she terminated Plaintiff.

78. Elashvili then claimed that unspecified people had complained about Plaintiff but identified no complainant, misconduct, or supporting evidence.

79. Before Plaintiff renewed her wage demand, Defendants had not issued her any written discipline and had not provided any specific negative performance feedback.

80. The immediate timing, escalating hostility after Plaintiff's repeated wage complaints, direct threat, absence of prior discipline, and vague *post hoc* explanation demonstrate that the asserted complaints were pretext and that Plaintiff's wage demands were a motivating and but-for cause of her termination.

81. As a direct result of Defendants' retaliation, Plaintiff lost wages and employment benefits and suffered emotional distress and other compensable harm.

**Willfulness**

82. Defendants knew Plaintiff's agreed rate and schedule, controlled the payroll and records, received repeated notice that wages and overtime remained unpaid, and acknowledged the debt through repeated promises of payment.

83. Notwithstanding that knowledge, Defendants continued to accept Plaintiff's work without paying all required compensation, withheld earned commissions, made or applied unauthorized deductions, issued inaccurate wage statements, and terminated Plaintiff after a renewed wage complaint.

84. Defendants' violations were therefore knowing, intentional, reckless, and willful, and were not based on a good-faith or reasonable belief that their practices complied with law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85. Plaintiff brings Count One under 29 U.S.C. § 216(b) on behalf of herself and all similarly situated current and former non-exempt employees who worked for Defendants at the

Great Neck pharmacy during the three years preceding the filing of this action through final judgment (the "FLSA Collective").

86. Plaintiff and the FLSA Collective members performed pharmacy, retail, customer-service, and related non-exempt work under the direction of the same operating manager and at the same location.

87. Upon information and belief, Defendants subjected Plaintiff and other non-exempt employees to common payroll practices that included irregular or withheld wage payments and failure to pay the required overtime premium for hours over forty.

88. Plaintiff's coworkers observed the wage dispute, were familiar with Defendants' payroll practices, and cautioned Plaintiff to remain silent to avoid conflict with management.

89. The members of the FLSA Collective are similarly situated because their claims turn on common questions, including whether Defendants were covered employers, maintained accurate time and payroll records, paid all required minimum and overtime wages, and acted willfully.

90. The identities, contact information, hours, and pay records of the FLSA Collective members are in Defendants' possession and can be identified through payroll and personnel records.

91. Court-authorized notice is appropriate so those employees may decide whether to opt into this action.

**RULE 23 CLASS ACTION ALLEGATIONS**

92. Plaintiff brings Counts Two and Three under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the NY Wage Class defined below, for the six-year period preceding the filing of this action through final judgment (the "NY Class Period").

93. The "NY Wage Class" consists of all current and former non-exempt employees who worked for Defendants at the Great Neck pharmacy during the NY Class Period and were subject to one or more of Defendants' practices of paying wages late or inconsistently, withholding earned straight-time wages, and failing to pay the required overtime premium for hours worked over forty in a workweek.

94. Plaintiff brings Count Five under Rule 23(a) and (b)(3) on behalf of herself and the "NY Wage-Statement Subclass," consisting of all NY Wage Class members who, in connection with a wage payment, were furnished a wage statement that inaccurately or incompletely reported their regular or overtime hours, regular or overtime rates, gross wages, deductions, or net wages, and whose resulting inability to reconcile the statement with the work performed concealed or prolonged the withholding of wages.

95. Excluded from the NY Wage Class and NY Wage-Statement Subclass (collectively, the "Rule 23 Classes") are Defendants; their owners, officers, directors, and members; any person who timely opts out; counsel and their employees; and the Court and its staff and their immediate families.

96. The Rule 23 Classes are ascertainable by objective criteria, including work location, dates of employment, non-exempt status, hours recorded or scheduled, amounts and dates of wage payments, and the contents of Defendants' wage statements.

97. Their membership can be determined from payroll, time, personnel, bank, and wage-statement records maintained or controlled by Defendants.

98. The precise number and identities of class members are not presently known to Plaintiff because that information is contained in records controlled by Defendants.

99. Upon information and belief, the Rule 23 Classes include sufficiently numerous current and former employees across the six-year NY Class Period that joinder of every member is impracticable.

100. Joinder is also impracticable because many class members have comparatively small individual claims, their identities and employment data are within Defendants' exclusive control, and current or former employees may reasonably fear retaliation.

101. That concern is concrete here: coworkers observed Defendants' hostility toward Plaintiff's wage demands and advised her to remain silent to avoid conflict with management.

102. Questions of law and fact common to the Rule 23 Classes include whether Defendants jointly employed class members; whether class members were non-exempt; whether Defendants maintained accurate time and payroll records; whether Defendants had common practices of delaying or withholding wages and omitting the required overtime premium; whether Defendants accurately recorded regular and overtime hours, rates, gross wages, deductions, and net wages on wage statements; whether the wage-statement inaccuracies prevented meaningful reconciliation and concealed or prolonged wage underpayments; whether Defendants acted willfully and in good faith; and the proper measure of class-wide relief.

103. Those common questions are capable of common answers from Defendants' centralized payroll and time records, wage statements, payment records, policies and practices, and testimony from the managers who controlled scheduling and payroll.

104. Plaintiff's claims are typical of the Rule 23 Classes because she worked as a non-exempt employee at the same pharmacy, under the same operating manager, and was subjected to the same alleged practices of irregular or withheld wage payments, unpaid overtime, and inaccurate wage statements.

105. Plaintiff's claims arise from the same course of conduct and legal theories as the class claims.

106. Plaintiff will fairly and adequately protect the interests of the Rule 23 Classes.

107. Her interests are aligned with those of absent class members, she has no conflict with them, and she seeks the same unpaid wages and statutory remedies arising from the same practices.

108. Plaintiff has retained counsel competent and experienced in wage-and-hour litigation and intends to prosecute the class claims vigorously.

109. Common questions predominate over any questions affecting only individual members.

110. Whether Defendants used the challenged pay and recordkeeping practices can be established with common evidence, and any differences in hours worked or damages can be determined mechanically from Defendants' records and individualized calculations without defeating predominance.

111. For the NY Wage-Statement Subclass, common proof will show whether Defendants used statements that systematically failed to reconcile recorded hours, applicable rates, gross wages, deductions, net wages, and amounts actually paid, and whether those defects deprived employees of the information needed to identify and timely challenge the underpayments.

112. Plaintiff alleges concrete financial harm from that common mechanism, not a bare procedural violation.

113. A class action is superior to other available methods for fairly and efficiently adjudicating these claims.

114. Separate actions would duplicate evidence, risk inconsistent results, and be economically impractical in light of the size of the individual claims and the costs of litigation.

115. The class claims are manageable because they concern non-exempt employees at one pharmacy, the relevant employment and payroll data are maintained by Defendants, common liability questions can be tried class-wide, and damages can be calculated using a common methodology.

116. Plaintiff is not aware of any material difficulty in concentrating the litigation in this District or any other pending action that would make class treatment inferior.

117. Accordingly, certification of the Rule 23 Classes under Rule 23(b)(3), appointment of Plaintiff as class representative, appointment of Plaintiff's counsel as class counsel, and notice to class members are appropriate.

118. Plaintiff reserves the right to refine the class definitions based on information obtained in discovery.

## CAUSES OF ACTION

### COUNT ONE

### FLSA MINIMUM-WAGE AND OVERTIME VIOLATIONS

*29 U.S.C. §§ 206, 207, and 216(b) — Plaintiff and the FLSA Collective*

119. Plaintiff incorporates by reference the preceding allegations.

120. Plaintiff and the FLSA Collective members were non-exempt employees, and Defendants were their employers, within the meaning of the FLSA.

121. In one or more workweeks, Defendants paid Plaintiff and the FLSA Collective members less than the applicable federal minimum wage for compensable hours worked.

122. In one or more workweeks, Defendants failed to pay Plaintiff and the FLSA Collective members one and one-half times their regular rates for compensable hours worked over forty.

123. Defendants knew or showed reckless disregard for whether their pay practices violated the FLSA.

124. Their violations were willful and were not taken in good faith.

125. Under 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective members are entitled to unpaid minimum and overtime wages, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and all other relief permitted by law.

**COUNT TWO**

**NEW YORK MINIMUM-WAGE AND OVERTIME VIOLATIONS**

*N.Y. Lab. Law §§ 650 et seq.; 12 N.Y.C.R.R. §§ 142-2.1 and 142-2.2 — Plaintiff and the NY Wage Class*

126. Plaintiff and the NY Wage Class members incorporate by reference the preceding allegations.

127. Plaintiff and the NY Wage Class members were non-exempt employees, and Defendants were their employers, within the meaning of the NYLL and applicable wage orders.

128. Defendants failed to pay Plaintiff and the NY Wage Class members at least the applicable New York minimum wage for every compensable hour in workweeks when Defendants withheld all or substantially all wages.

129. Defendants failed to pay Plaintiff and the NY Wage Class members one and one-half times their regular rates, including all remuneration required to be included in those rates, for compensable hours above forty in a workweek.

130. Defendants' violations were willful and not undertaken in good faith. Plaintiff and the NY Wage Class members are entitled to unpaid wages, liquidated damages, prejudgment interest, reasonable attorneys' fees and costs, and other relief under the NYLL.

**COUNT THREE**

**FAILURE TO PAY AGREED AND EARNED WAGES AND COMMISSIONS**

*N.Y. Lab. Law §§ 190, 191, and 198 — Plaintiff and the NY Wage Class*

131. Plaintiff and the NY Wage Class members incorporate by reference the preceding allegations.

132. Plaintiff's hourly compensation and promised commissions, and the hourly compensation earned by NY Wage Class members, were "wages" within the meaning of N.Y. Lab. Law § 190(1).

133. Defendants failed to pay Plaintiff and the NY Wage Class members all hourly wages earned under their agreed terms of employment, failed to pay those wages when due, and failed to pay all remaining wages by the regular payday following termination. As to Plaintiff individually, Defendants also failed to pay the commissions she earned under her compensation agreement.

134. Defendants' failure to pay was willful and not in good faith. Under N.Y. Lab. Law § 198, Plaintiff and the NY Wage Class members are entitled to unpaid wages, and Plaintiff is additionally entitled to her unpaid commissions; they are also entitled to liquidated damages, prejudgment interest, reasonable attorneys' fees and costs, and other relief permitted by law.

**COUNT FOUR**

**UNLAWFUL WAGE DEDUCTIONS**

*N.Y. Lab. Law §§ 193 and 198 — Plaintiff Individually*

135. Plaintiff incorporates by reference the preceding allegations.

136. Defendants deducted or offset the undiscounted price of pharmacy purchases against wages otherwise due to Plaintiff without the written, voluntary authorization and advance written disclosures required by N.Y. Lab. Law § 193.

137. Defendants also failed to honor the promised employee discount, furnish a complete account of each charge, or provide the workplace account information and limits required for deductions associated with pharmacy purchases.

138. Defendants' deductions were willful and reduced wages otherwise payable to Plaintiff. Plaintiff is entitled to recover the unlawfully deducted wages, liquidated damages, prejudgment interest, reasonable attorneys' fees and costs, and other relief permitted by law.

**COUNT FIVE**

**INACCURATE WAGE STATEMENTS**

*N.Y. Lab. Law §§ 195(3) and 198(1-d) — Plaintiff and the NY Wage-Statement Subclass*

139. Plaintiff and the NY Wage-Statement Subclass members incorporate by reference the preceding allegations.

140. Defendants were required to furnish Plaintiff and the NY Wage-Statement Subclass members an accurate wage statement with each wage payment identifying, among other things, the work dates covered, regular and overtime rates, regular and overtime hours, gross wages, deductions, and net wages.

141. The statements Defendants furnished to Plaintiff and the NY Wage-Statement Subclass members omitted or misstated material information, including regular hours, overtime hours, overtime rates, gross wages, deductions, and net wages and, as to Plaintiff, earned commissions.

142. Those inaccuracies prevented Plaintiff and the NY Wage-Statement Subclass members from reconciling the statements against their work and compensation, calculating the precise underpayments, and timely challenging discrepancies or deductions. They thereby concealed and prolonged the wage deprivation and caused concrete financial injury beyond a bare statutory violation.

143. Defendants' violations were willful. Plaintiff and the NY Wage-Statement Subclass members are entitled to statutory damages, reasonable attorneys' fees and costs, and other relief under N.Y. Lab. Law § 198(1-d).

**COUNT SIX**

**BREACH OF ORAL COMPENSATION AGREEMENT**

*New York Common Law — Plaintiff Individually and in the Alternative*

144. Plaintiff incorporates by reference the preceding allegations.

145. Defendants offered, and Plaintiff accepted, employment on terms that included $19.00 per hour, a commission equal to fifty percent of the retail merchandise Plaintiff sold, and a ten-percent employee discount on merchandise Plaintiff purchased.

146. Plaintiff performed her obligations by working the assigned schedule, performing pharmacy and customer-service duties, and generating retail sales for Defendants.

147. Defendants breached the agreement by failing to pay all agreed hourly compensation and commissions and by withholding the promised employee discount.

148. Plaintiff sustained damages in an amount to be determined from Defendants' payroll and point-of-sale records.

149. This claim is pleaded in the alternative to the extent any promised compensation is determined not to be recoverable as wages under the NYLL.

**COUNT SEVEN**

**FLSA RETALIATION**

*29 U.S.C. §§ 215(a)(3) and 216(b) — Plaintiff Individually*

150. Plaintiff incorporates by reference the preceding allegations.

151. Plaintiff engaged in protected activity by repeatedly complaining directly to Elashvili that Defendants had not paid all minimum, straight-time, and overtime wages required for the hours she worked.

152. Elashvili understood the complaints as demands to remedy unlawful wage practices.

153. Defendants responded with escalating hostility and a threat and terminated Plaintiff during the same exchange in which she renewed her demand for unpaid wages.

154. The close temporal proximity, direct threat, absence of prior discipline, and Defendants' vague and unsupported explanation establish a causal connection between Plaintiff's protected activity and her termination.

155. Defendants thereby violated 29 U.S.C. § 215(a)(3).

156. Under 29 U.S.C. § 216(b), Plaintiff is entitled to legal and equitable relief, including lost wages, an equal amount as liquidated damages, compensatory damages, reasonable attorneys' fees and costs, and other relief permitted by law.

## COUNT EIGHT

## NEW YORK LABOR LAW RETALIATION

*N.Y. Lab. Law § 215 — Plaintiff Individually*

157. Plaintiff incorporates by reference the preceding allegations.

158. Plaintiff reasonably and in good faith believed Defendants' failure to pay all hourly wages, overtime, and commissions violated the NYLL, and she repeatedly complained about those practices directly to Elashvili.

159. Plaintiff's complaints did not need to identify a statutory section to be protected.

160. They gave Defendants clear notice that she was asserting her right to be paid all wages legally due.

161. Defendants threatened and terminated Plaintiff because of those complaints, in violation of N.Y. Lab. Law § 215.

162. Plaintiff is entitled to all appropriate relief, including lost compensation, front pay in lieu of reinstatement, compensatory damages, statutory liquidated damages, reasonable attorneys' fees and costs, and other relief permitted by law.

## JURY DEMAND

163. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally where permitted, as follows:

A. Certifying this action as an FLSA collective action under 29 U.S.C. § 216(b), conditionally certifying the proposed FLSA Collective for notice purposes, and authorizing notice to all similarly situated employees;

B. Certifying the NY Wage Class and NY Wage-Statement Subclass under Rule 23(b)(3), appointing Plaintiff as class representative, appointing Plaintiff's counsel as class counsel, and directing the best notice practicable to class members;

C. Declaring that Defendants violated the FLSA and NYLL as alleged;

D. Awarding Plaintiff, the FLSA Collective, and the NY Wage Class, as applicable, unpaid minimum, straight-time, and overtime wages and other earned compensation, including Plaintiff's unpaid earned commissions, in amounts to be determined at trial;

E. Awarding the amount of all unlawful deductions and offsets from Plaintiff's wages;

F. Awarding liquidated damages under the FLSA and NYLL to the fullest extent permitted, without duplicative recovery;

G. Awarding Plaintiff and the NY Wage-Statement Subclass statutory damages for inaccurate wage statements under N.Y. Lab. Law § 198(1-d);

H. Awarding back pay, front pay in lieu of reinstatement, lost benefits, compensatory damages including emotional-distress damages, statutory liquidated damages, and all other legal or equitable relief available for retaliation;

I. Awarding contract damages in the alternative for Defendants' breach of the parties' compensation agreement;

J. Awarding prejudgment and post-judgment interest as permitted by law;

K. Awarding reasonable attorneys' fees, costs, and disbursements;

L. Granting appropriate declaratory and injunctive relief; and

M. Granting such other and further relief as the Court deems just, equitable, and proper.

Dated: Jamaica, New York
October 26, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: *<u>/s/ Emanuel Kataev, Esq.</u>*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Regina Sadykova*